UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

FILED
2003 JUN -9 PM 3: 51

| | |
|---|---|
| AIRFOIL TECHNOLOGIES INTERNATIONAL, 5966 Heisley Road Mentor, Ohio 44060 | ) ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) ) |
| PROPULSION SUPPLY GROUP, INC. , 906 Fountain Parkway Grand Prairie, Texas 75050 | ) ) ) ) |
| and | ) ) |
| KARL DRUSCH, 2419 Pine Hollow Court Arlington, Texas 76006 | ) ) ) ) |
| Defendants. | ) ) |

Case No.

Judge: **1:03CV1152**

**JUDGE WELLS**

**MAG. JUDGE PERELMAN**

**COMPLAINT**
(Jury Demand Endorsed
Herein)

For its Complaint against Defendants Propulsion Supply Group, Inc. ("PSG") and

Karl Drusch ("Drusch") (collectively "Defendants"), Plaintiff Airfoil Technologies

International ("ATI"), states as follows:

## THE PARTIES

1.      ATI is a Delaware limited liability company, with its principal place of

business in Mentor, Ohio.

2.      Defendant PSG is a Texas corporation, with its principal place of business

in Grand Prairie, Texas.

3.      Defendant Drusch is an individual residing at 2419 Pine Hollow Court,

Arlington, Texas 76006.

## JURISDICTION AND VENUE

4.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332, as complete diversity exists between ATI and Defendants, and the amount in controversy exceeds $75,000.00.

5.     This Court has personal jurisdiction over PSG.  PSG has transacted substantial business within this state and judicial district, and PSG has caused tortious injury within this state and judicial district.

6.     This Court has personal jurisdiction over Drusch.  Drusch has personally transacted substantial business within this state and judicial district, and Drusch has caused tortious injury within this state and judicial district.

7.     Venue is appropriate in the Northern District of Ohio pursuant to 28 U.S.C. § 1391, because events giving rise to the claims occurred in this district, and both PSG and Drusch conducted substantial business in this district.

## BACKGROUND

8.     On or about April 7, 2000, Drusch represented to ATI that he and PSG could sell to ATI certain aircraft engine parts for $1.4 million, and PSG and Drusch could then market and sell them on ATI's behalf for $2.7 million.

9.     On or about May 5, 2000, ATI and PSG entered into an Inventory Consignment Agreement (the "Agreement") (attached hereto as Exhibit 1).

10.     Under the Agreement, ATI agreed to purchase the aircraft engine parts and components ("Material") from PSG, to then consign the Material to PSG for purposes of sale, and to grant to PSG the exclusive right to market and sell such Material.  The

2

specific list of parts and components that comprised the Material is attached to the Agreement as Exhibit A (the Agreement with exhibits is attached hereto as Exhibit 1).

11. In the Agreement, PSG and Drusch warranted to ATI one hundred percent (100%) traceability back to new on all life-limited parts that were part of the Material.

12. Under the Agreement, PSG agreed to accept delivery of the Material and to provide, at no cost to ATI, secure and proper storage for the consigned parts in PSG's warehouse.

13. Under the Agreement, title to all Material consigned remained with ATI until such time as said Material was shipped or transferred to a good faith purchaser, at which time, title to the Material sold would transfer from ATI to the purchaser.

14. Under the Agreement, PSG agreed to use its best efforts to sell the Material promptly.

15. Under the Agreement, PSG was to receive Twenty percent (20%) of the net proceeds of the sale of ATI's Material as compensation for its efforts.

16. Pursuant to the Agreement, all invoicing and accounts receivable efforts for the Material were to be handled by PSG, and net sales proceeds collected by PSG on behalf of ATI. Additionally, ATI's distributive share of such net sales proceeds was to be remitted monthly to ATI no later than the earlier of (a) the fifteenth (15th) day of the month following the month in which such proceeds were collected or (b) 10 days following collection of the invoice.

17. Pursuant to the Agreement, PSG agreed to provide monthly sales reports to ATI, which included invoice number and date, customer, selling price, items sold, quantity, and condition.

3

18.     On or about May 9, 2000, ATI purchased the Material from PSG for $1.4 million.

19.     Upon information and belief, PSG sold some of the Material under the Agreement and collected funds in accordance with the Agreement. PSG failed to forward ATI's distributive share of the net sale proceeds to ATI as required by the Agreement. PSG failed to use its best efforts to sell the balance of the Material under the Agreement. PSG failed to provide monthly sales reports as required under the Agreement. The life-limited parts contained within the Material were not 100% traceable back to new, as warranted in the Agreement.

## COUNT ONE
### (Breach of the Agreement)

20.     ATI incorporates by reference the preceding allegations of this Complaint as if fully rewritten and alleged herein.

21.     ATI and PSG entered into the Agreement pursuant to which ATI agreed to consign to PSG aircraft engine parts and components for sale by PSG, as set forth more fully above. ATI fulfilled its obligations under the Agreement and purchased the Material for $1.4 million.

22.     Although PSG sold some of the Material, PSG breached the Agreement by failing to remit ATI's distributive share of the net sales proceeds for the Material it did sell, an amount totaling $68,588.00, plus interest from the date of breach.

23.     PSG also breached the Agreement by failing to use its best efforts to sell the Material.

24.     In addition, PSG breached the Agreement by failing to provide monthly sales reports to ATI as required under the Agreement.

4

25. Furthermore, PSG breached the Agreement by failing to provide life-limited parts that were 100% traceable back to new as specifically required under the Agreement.

26. As a result of PSG's four breaches of the Agreement, ATI has been damaged in the amount of $1.4 million, plus interest.

## COUNT TWO
### (Conversion)

27. ATI incorporates by reference the preceding allegations of this Complaint as if fully rewritten and alleged herein.

28. ATI, at all material times, has had the superior right to possess 80% of the net proceeds from the sale of the Material, and any portion of the Material.

29. Despite due demand for ATI's distributive share of the net proceeds, PSG has refused to tender such proceeds to ATI.

30. The current amount of the proceeds being wrongfully withheld from ATI is $68,588.00, plus interest from the date of the conversion.

31. By refusing to tender ATI's distributive share of the net proceeds to ATI, and/or by using the proceeds for its own purpose, PSG has acted in a wrongful and unauthorized manner, inconsistent with ATI's right to the proceeds.

32. PSG's wrongful retention of ATI's distributive share of the net proceeds constitutes conversion for which PSG is liable to ATI in damages.

## COUNT THREE
### (First Fraud Count against PSG)

33. ATI incorporates by reference the preceding allegations of this Complaint as if fully rewritten and alleged herein.

5

34. PSG represented that the life-limited parts included in the Material ATI purchased would be 100% traceable back to new.

35. PSG's representations were material inducements to ATI to purchase the Material, enter into the Agreement, and continue to perform ATI's obligations under the Agreement, and ATI reasonably relied on the representations made by PSG.

36. PSG knew that its representations were material inducements to ATI and that ATI, in purchasing the Material, entering into the Agreement, and continuing to perform under the Agreement, was relying on the same.

37. PSG made the representations and promises with the knowledge that they were false in all material respects or made such representations and promises with such reckless disregard as to their truth or falsity that such knowledge may be inferred.

38. PSG made the representations and promises with the intent to mislead ATI into relying on them.

39. ATI had the right to rely on PSG's representations and promises, and did so actually rely.

40. As a direct and proximate result of PSG's conduct, ATI has been damaged in an amount which will be established at trial, but which is not less than $2.7 million.

41. PSG acted wrongfully, tortiously, intentionally and with malice and/or reckless disregard for the rights of ATI, and ATI is therefore entitled to punitive damages from PSG in an amount which will be determined at trial.

## COUNT FOUR
### (Second Fraud Count against PSG)

42. ATI incorporates by reference the preceding allegations of this Complaint as if fully rewritten and alleged herein.

6

43.     PSG represented to ATI that the Material ATI was to purchase for $1.4 million, could be marketed and sold for $2.7 million.

44.     PSG's representations regarding the value of the Material were material inducements to ATI to purchase the Material, enter into the Agreement and to continue to perform its obligations under the Agreement, and ATI reasonably relied on the representations made by PSG.

45.     PSG knew that its representations and promises were material inducements to ATI and that ATI, in purchasing the Material, entering into the Agreement, and continuing to perform under the Agreement, was relying on PSG's representations and promises.

46.     PSG made the representations and promises with the knowledge that they were false in all material respects or made such representations and promises with such reckless disregard as to their truth or falsity that such knowledge may be inferred.

47.     PSG made the representations and promises with the intent to mislead ATI into relying on them.

48.     ATI had the right to rely on PSG's representations and promises, and did so actually rely.

49.     As a direct and proximate result of PSG's conduct, ATI has been damaged in an amount which will be established at trial, but which is not less than $2.7 million.

50.     PSG acted wrongfully, tortiously, intentionally and with malice and/or reckless disregard for the rights of ATI, and ATI is therefore entitled to punitive damages from PSG in an amount which will be determined at trial.

## COUNT FIVE
### (First Fraud Count against Drusch)

51. ATI incorporates by reference the preceding allegations of this Complaint as if fully rewritten and alleged herein.

52. Drusch individually represented that the life-limited parts included in the Material ATI purchased would be 100% traceable back to new.

53. Drusch's representations were material inducements to ATI to purchase the Material, enter into the Agreement and to continue to perform its obligations under the Agreement, and ATI reasonably relied on the representations made by Drusch.

54. Drusch knew that his representations were material inducements to ATI and that ATI, in purchasing the Material, entering into the Agreement, and continuing to perform under the Agreement, was relying on Drusch's representations and promises.

55. Drusch made the representations and promises with the knowledge that they were false in all material respects or made such representations and promises with such reckless disregard as to their truth or falsity that such knowledge may be inferred.

56. Drusch made the representations and promises with the intent to mislead ATI into relying on them.

57. ATI had the right to rely on Drusch's representations and promises, and did so actually rely.

58. As a direct and proximate result of Drusch's conduct, ATI has been damaged in an amount which will be established at trial, but which is not less than $2.7 million.

8

59. Drusch acted wrongfully, tortiously, intentionally and with malice and/or reckless disregard for the rights of ATI, and ATI is therefore entitled to punitive damages from Drusch in an amount which will be determined at trial.

## COUNT SIX
### (Second Fraud Count against Drusch)

60. ATI incorporates by reference the preceding allegations of this Complaint as if fully rewritten and alleged herein.

61. Drusch represented to ATI that the Material ATI was to purchase for $1.4 million, could be marketed and sold for $2.7 million.

62. Drusch's representations regarding the value of the Material were material inducements to ATI to purchase the Material, enter into the Agreement and to continue to perform its obligations under the Agreement, and ATI reasonably relied on the representations made by Drusch.

63. Drusch knew that his representations and promises were material inducements to ATI and that ATI, in purchasing the material, entering into the Agreement, and continuing to perform under the Agreement, was relying on Drusch's representations and promises.

64. Drusch made the representations and promises with the knowledge that they were false in all material respects or made such representations and promises with such reckless disregard as to their truth or falsity that such knowledge may be inferred.

65. Drusch made the representations and promises with the intent to mislead ATI into relying on them.

66. ATI had the right to rely on Drusch's representations and promises, and did so actually rely.

67. As a direct and proximate result of Drusch's conduct, ATI has been damaged in an amount which will be established at trial, but which is not less than $2.7 million.

68. Drusch acted wrongfully, tortiously, intentionally and with malice and/or reckless disregard for the rights of ATI, and ATI is therefore entitled to punitive damages from Drusch in an amount which will be determined at trial.

### COUNT SEVEN
### (Piercing the Corporate Veil)

69. ATI incorporates by reference the preceding allegations of this Complaint as if fully rewritten and alleged herein.

70. Drusch in his operations of PSG dominated and controlled PSG to the extent that PSG did not have its own separate mind, will or existence.

71. Upon information and belief, PSG never had a genuine and separate corporate existence from Drusch, and existed to enable Drusch to wrongfully transact his business under a corporate form.

72. Drusch, as the alter ego of PSG, has been conducting, managing, and controlling the affairs of PSG with respect to ATI's claims in this case, as if it were Drusch's own business. Drusch has used the separate corporate identity of PSG for the purpose of unjustly attempting to shield himself from prospective liability.

73. Thus, ATI should be permitted to pierce the corporate veil and hold Drusch personally liable for PSG's conduct, including debts owed by PSG, and ATI is entitled to recover from Drusch, damages owed by PSG, set forth more fully above.

**WHEREFORE**, ATI prays for judgment on Count One of its Complaint against PSG in the amount of $1,400,000.00, plus interest at the rate of 10.00% per annum from

10

the date of breach until the present; on Count Two of its Complaint for judgment against PSG in the amount of $68,588.00, plus interest at the rate of 10.00% per annum from October 2001 until present; on Counts Three and Four of its Complaint for judgment against PSG in an amount not less than $2.7 million; on Counts Five and Six of its Complaint for judgment against Drusch in an amount not less than $2.7 million; and on Count Seven of its Complaint for judgment against Drusch in the amount owed to ATI by PSG; and punitive damages against PSG and Drusch in an amount which will be determined at trial as well as the costs of the within proceedings and whatever other relief the Court deems just.

Kip T. Bollin

Kip T. Bollin (#0065275)
*Kip.Bollin@ThompsonHine.com*
Elizabeth B. Wright  (0018456)
*Elizabeth.Wright@ThompsonHine.com*
Andrea B. Daloia (#0074106)
*Andrea.Daloia@ThompsonHine.com*
THOMPSON HINE LLP
3900 Key Center
127 Public Square
Cleveland, Ohio 44114-1291
Phone:  (216) 566-5500
Fax:     (216) 566-5800

Attorneys for Plaintiff, Airfoil Technologies
International

11